Our first case is 19-5054 United States v. Hamett. Mr. Bailey, you may proceed when you are ready. Thank you, Your Honor. May it please the Court, my name is Rick Bailey. I'm counsel for the appellant, the defendant below, Randy Hamett. This case raises the question of whether the trial court properly allowed the defendant's waiver of counsel in the middle of trial. I think we start from the premise that, as this Court said in several cases, there's a strong presumption against the waiver of counsel being valid and any doubts concerning an attorney waiver must be resolved in the defendant's favor. It's also important to keep in mind that the criminal trial is the point in the process when the right to counsel is the most critical. The Supreme Court said in Patterson v. Illinois, recognizing the enormous importance and role that an attorney plays at a criminal trial, we have imposed the most rigorous restrictions on the information that must be conveyed to a defendant and the procedures that must be observed before permitting him to waive his right to counsel at trial. So what are those rigorous restrictions and procedures? Well, the Supreme Court has laid out in the Von Moltke case a list of non-exhaustive factors that should be reviewed with the defendant before allowing him to waive his right to counsel so that the presumption can be overcome. Those factors include an apprehension of the nature of the charges, statutory offenses included within them, the range of allowable punishments they're under, possible defenses to the charges and circumstances in mitigation, and all other facts essential to a broader understanding of the whole matter. In the U.S. v. Hansen case that this court's decided just shortly after this present appeal was filed, this court added to that all other factors that the trial court has to take reasonable steps to ensure that the defendant understands his obligation to adhere to federal procedure and evidentiary rules. While adhering is the best way for the trial court to satisfy these elements, it's not required and there's no precise litany, but the trial court needs to question the defendant as long and as thoroughly as necessary to ensure that the defendant has a sufficient understanding of all these standards. In this case, there's insufficient evidence in the record that the trial court completely and thoroughly questioned the defendant on any of these standards. So this is... This is Judge Tinkovich. Let me jump in at this point. Now, this waiver did not occur at the beginning of the trial or in pretrial proceedings. It occurred almost at the end of the prosecution's opening case. Did that matter? Only in the sense that, as I said, Your Honor, we were at a critical portion of the procedure, but in terms of the court's obligation to question as thoroughly and as fully as necessary, the court has made clear that you can't let the press of trial, the fact that a jury is sitting in the jury box, excuse or eliminate the obligation that the trial court has to ensure... There are some... There's obviously some baseline questions that need to be asked and answered to satisfy voluntary, knowingly, and intelligently, but Hanson also talked about looking at case-specific factors. And in a case like this, you've got a single kidnapping charge. We've had opening and closing... Or, I'm sorry, opening statements. We've had witnesses. And so wouldn't we... Isn't this particular individual in a different position than an individual might be trying to weigh this legal representation prior to trial? And should that matter or should it not? Those factors are certainly factors that the court can consider, Your Honor, but still, even with the consideration of those, there needs to be sufficient evidence in the record that shows whether it was through questioning by the district judge or whether there's other evidence to show that the defendant understood these elements that Von Moltke listed out. And in this case, there simply isn't. For example... Let's talk about that before I pass to Judge Briscoe. One factor would be the nature of the charges, and he was aware of that, wasn't he? He had a general understanding of the charges, Your Honor, but in Von Moltke, there's more strict than just this general understanding. It's clear that he has... Go ahead. No, he needs to understand the elements of the charges that he faces. And in this case, we don't have any evidence in the record that those matters were reviewed with him either during the course of the trial or during the hearings that the court had when the court allowed him to waive counsel. And the court is not... During the Ferretta hearing, he did have two lawyers there, and eventually Judge Egan allowed them to remain as standby counsel. And after she went through the colloquy with him, she asked his lawyers if they had any additional questions or concerns before she accepted his waiver. Does it matter that his lawyers, before they were formally discharged, didn't ask for any additional instruction from the court? And would we be in a position where there might be invited error by the defendant? No, Your Honor, I don't think it matters. The court, in several cases where they've set the standard of review, have said that a pro se defendant can't be held to know what the perils... We say that they don't understand the perils of self-representation, and therefore you can't expect them to recognize that they've not been correctly and fully advised, let alone to point out the court's errors. Thank you. Let's let my colleagues jump in at this point. Judge Briscoe? What do you see as the main failing here? Is it the fact that the punishment was not correctly given, which is a problem? Or is it that the court did not fully explain defenses? Your Honor, I don't know that we can... I can point to any one main failing. What we have here is a total lack of sufficient inquiry into all of these elements. If we only had, for example, a misstatement as to the maximum penalty, but the trial court had fully inquired as to all the other matters, including whether he understood his obligation to comply with the rules of evidence and rules of procedure and understood the elements, that might be a closer case. But in this case, we have, I think, a dearth of evidence as to each of these factors that, in reviewing this case, there simply isn't enough evidence  that a waiver should not be granted. So you would argue if there is failing in any of the factors, any one of them? I don't think I need to make that argument here, Your Honor, because we have a failing in so many of the factors. Okay. And do you also... How do you respond to the government's arguments here  and the defendant was acting pro se that he seemed to do pretty well? Do you look at that? No, Your Honor. The court is clear and has said this a number of times that you can't look at what transpires later to determine whether, at the time of the waiver, the waiver was knowingly and intelligently made. For example, the court has said that the appointment of standby counsel, which while recommended and certainly helpful in cases like this, the mere fact that standby counsel was appointed does not relieve or reduce the burden of the trial court to make sure that, at the time the waiver was granted, the defendant was knowingly and intelligently making that decision. And I would assume, then, the same would go for the elements of the crime. If he is later apprised of the elements through the reading of the instructions, that, in your view, would not suffice because he would have to have known that when he waived his right to counsel. That's correct, Your Honor. When the waiver is made, the waiver must be knowingly and intelligently made. The court has never allowed that to be filled in later. I don't have anything further. Thank you. Judge Matheson? Thank you. Counsel, putting this issue in context, Mr. Hammett asked to represent himself mid-trial because he wanted to question witnesses. The cases indicate that we're supposed to view the colloquy through a pragmatic lens. Why wasn't it sufficient for the district judge to tailor her warnings to his ability to ask questions? Because that's what he wanted to do. And the judge also said those questions might be objectionable under the federal rules of evidence. Didn't the judge target these warnings to the situation at hand? And why wasn't that sufficient? Your Honor, one of the reasons that the trial court is required to go through this litany is to make sure that the defendant understands the total breadth of responsibility that he or she is taking on and the weight of the obligations and risks. And so it's not, I don't think it's sufficient to simply target it to what the court perceives as the defendant's narrow interest because there may be risks or possible downsides to this decision that the defendant's unaware of. And if the court is narrowly targeting its colloquy to only what it thinks is important to the defendant, we don't have any confidence that the defendant then fully understands the breadth of the obligation that he or she is taking on. As a follow-up to that, counsel, the district court mentioned the rules of evidence and procedure during the colloquy. Why wasn't that enough for Mr. Hammett to know that he needed to follow the rules? Your Honor, in the Hansen case, like I said, it was decided while this appeal was pending. The district court asked specific questions about the defendant understanding the federal rules of evidence and federal rules of criminal procedure. And its answers were at least ambiguous, if not confusing. Court said that even though those precise questions had been asked, because the answers were confusing, the district court had an obligation to inquire further to clear that up. And because he didn't, the conviction was reversed. Here, we don't have anything close to that clarity of questions. We have the judge saying that some of your questions might not be allowed at trial. And I don't know whether that would happen or wouldn't happen because I don't know what the questions are. Do you understand that? Well, didn't the judge also say that his two counsel were experienced and did understand the rules? Yes, but the court never made clear to the defendant that the expectation was going to be on him to follow the rules and that he would be held to the same standard of his attorneys. The judge certainly pointed out that his trial counsel would do a better job of it, but the judge never informed Mr. Hammett of the standard to which he would be held if he continued to make this decision to go forward without counsel. Just one last question, counsel. Even though the court may have misstated the maximum punishment, why wasn't the 20 years the court did mention sufficient for Mr. Hammett to know that he was facing serious penalties? I think it does show that he understood there were some serious penalties, but I think there's a significant difference between a 20-year sentence and a life sentence. If that was the only deficient sentence, I don't think the court would have asked this question for the court. But when you stack that deficiency on top of the failure to talk about rules of evidence and criminal procedure, the failure to make sure that he understood the charges and the elements of those charges, viewed as in combination, I don't think that complies with the high standard that the court has set. You think, this is Judge Tempkiewicz, what risk do you think Mr. Hammett failed to apprehend at the point he took over? Well, we don't know that he understood what the elements were, what the charges were. We know he clearly had questions about that and questions that the court didn't allow him time to get cleared up before requiring him to go forward. We, at least from the record, don't know that he understood that he was facing a potential life sentence. But he said he was 62 years old. Yes. And the judge said he might get 20 years. I mean... Again, Your Honor, you can look at it post-fact that, well, he only got a 20-year sentence, so the judge actually gave him what she warned him might happen. But again, looking at it at the time the decision was made, there's something about the weight of a life sentence that just sounds and is perceived differently than a sentence of a given number of years. All right, thank you. I think we understand your argument, Mr. Bailey. We appreciate that. Let's hear from the government. Mr. Glantz. Yes, sir. May it please the court. Mr. Bailey, I'm Jeff Glantz, one of the eight USAIDs who tried the case for the United States. In this case, the record's clear. The defendant knew what he was getting into. He knew he had excellent or great attorneys, according to him. He just didn't want it. The defense wants to elevate form over substance and elevate a superficial gotcha standard over pragmatism and common sense. In this case, Mr. Hammett knowingly, voluntarily, and intelligently waived his right to counsel in order to pursue his own trial strategy. We know that from what he said during the Feretta hearing. This is the only issue in this case. His three convictions at trial shouldn't be reversed because he was made aware of his right to counsel and chose to represent himself with his eyes wide open. And again, we know this from the record because what the defendant said. The defendant chose to represent himself and put on his own defense, even though at the time he thought he had two great attorneys who were doing a very good job for him. That's what he said. But he wanted to pursue a different trial strategy that involved recalling two witnesses, including the victim. He chose to disregard the advice of his two experienced attorneys who he knew didn't agree with his proposed strategy, but he wanted to do it anyway. He was actually aware of the benefits of having counsel. He just didn't want it. And the law is very clear. The defendant's entitled to represent himself if he wishes, and the standard is knowing and intelligent. And that simply means that was he reasonably informed by the court of the hazards of self-representation and had a sufficient understanding of those hazards. And he brought this up, as the court noted, the very first time towards the very end of the government's case in chief. And I do think that's relevant because he had seen and the court had seen all of the evidence that came in. He had actually witnessed what he considered to be great attorneys performing very well for him. So he knew what his right to counsel would look like. The court then conducted two ex parte sealed hearings that included Hammett's two experienced attorneys, the court and Mr. Hammett. The government was not involved. And the court conducted the Ferretti hearing, tailored specifically to the facts and circumstances of this case. She didn't follow a pro forma script or ask some sort of very technical questions. She tailored the questioning to the things that were most important to Mr. Hammett in layman terms that he could understand. She explained the benefits of counsel that Mr. Hammett had been experiencing during the trial and then the risk of pro se representation in the context of this case. What was most important to Mr. Hammett was his questioning of witnesses and doing a closing argument. And the Ferretti hearing, as this court well knows, is a favored approach. It's sufficient but not necessary, as stated in cases like Willie, among others. It is just a means to an end to ensure the defendant is aware of the dangers and disadvantages of self-representation and he knows what he's doing. The court's Ferretti hearing in this case did precisely that. And we know that the defendant was aware of the risk because he said so on the record in many different ways. For example, at the end of the... Mr. Gellin, this is Judge Simpovich. Let me interrupt you there. It sounds like you're moving on to a point you want to make, so my question will probably let you go there. It seems to me that the two biggest problems for me here is sort of the degree of specificity that our cases suggest or demand. And here, Judge Egan did not go into any specificity regarding possible offenses he might have to the charges or let him... either tell him or let him see documents that would explain the elements of the charges against him. And how are we going to overlook those two deficiencies here? I'm with you on the pragmatic and holistic approach, but are those fatal flaws to your argument? And if not, why not? Not at all, Your Honor. And with respect to the possible defenses, again, this took place in the context of when the trial took place, that he'd seen the evidence, he'd seen the defenses his attorneys were trying to pursue, and then he had his own trial strategy that he wanted to pursue that he articulated to the judge, that he thought some of the witnesses were saying things that weren't true and he wanted to combat those. And so I think in the context of this case and all of the cases talk about in the total circumstances or in the context of the case. And then the issue about the elements, I do think there's a couple things. First of all, as I lay out, I believe the defendant actually had the jury instructions and actually had the elements in front of him. When the judge was telling him that he couldn't read them right then, but she brought up the elements and she was emphasizing to him the idea that he didn't understand the law. And it was actually, I think, a positive thing in this case that she was emphasizing that he didn't know what he was doing and that he didn't even know all of the law that was relevant. And then, but he realized that. He agreed with the court and still wanted to go on and do so and represent himself. Again, whether it... In the face of the foolish man defends himself, what was the judge's obligation to probe further knowing that a lay person doesn't understand or know the law? I mean, what's the big... You're putting a fairly low bar here, perhaps, and this case requires us to decide how high the bar should be for specific instructions about the legal requirements that he's going to have to overcome to get an acquittal. I think the bar, as laid out on all of the cases, sort of collectively, is you have to look at the totality of the circumstances and see if the defendant was actually aware of his right to counsel, which is clear in this case because he had actually benefited from it. And then also, did he have some appreciation of the risk? And you can't... The bar isn't that the judge has to inform him of all of the law, all of the civil procedures, I mean, criminal procedures, but just tailor that to what's important in the context of that case. And we know the defendant was aware of that because he said, at towards the end of the FREDA hearing, this is quite an endeavor to take on with such a lack of knowledge. That's in the third volume at 37. At the beginning of the FREDA hearings, he said, well, this is quite a choice. He later on says, this is my life. I'm not going to play games. He said, I feel it's very true when the judge says, you know, you're going to be disadvantaging, disadvantaged examining witnesses because you'd never done it before. That's on page 34 and 35 of the record. He consistently admitted he was ill-prepared to represent himself, especially relative to his experienced attorneys who he thought were doing a very good job for him. And that's 33 through 36 of the record. And then he even admitted to the court that he understood he was more likely to be acquitted by being represented by his two experienced attorneys. So the record, I think the answer to your question is you have to look at the record and see does it demonstrate that the defendant understood the risk he was undertaking. And in this case, the issue of the defenses is mitigated to a certain extent because it was clear the defendant had a trial strategy he wanted to put forth that his two experienced attorneys who he thought were great in doing a good job thought was unwise. This is not one of those cases where he's left stranded, where either because of his political or social beliefs, he doesn't believe in lawyers or he's never had counsel or he's had some issue where he believes his attorneys aren't prepared or he believes he has some breakdown of communicating with his attorneys. This is the exact contrary and this makes this case very different. Let's give Judge Briscoe a chance to ask questions if she has one. Yes, I do. Counsel, I am unclear how we can avoid the requirements that we've set out in Hansen, which of course fight back to Van and Coretta. We don't have here an advisement of the nature of the charges, the statutory offenses that are included within them, the range of possible punishments, the possible defenses to the charges. I mean, to me, it is a pretty empty record. I appreciate there were two hearings, but these basics were not covered. I believe they are, Your Honor, because he was advised of the offenses way back in both the complaint, when there was initial complaint under one of the charges and then as his initial appearance, the indictment was read during the trial, I believe, and then he listened to all of the evidence through the trial. This is not a case where it's at the beginning of the proceedings where there might be some unclarity about what the charges are. It was certainly clear what the charges were. The issue of the maximum penalty, that was unfortunate that the judge misstated that, but as the cases say, I think he actually even says that, you know, not doing one of the things, one of the, Faretta... That's a pretty key thing, isn't it? The maximum penalty that you're facing and you're queuing up to defend yourself? Not in this particular context, Your Honor. As we said, the whole reason we want to know what the maximum penalty is, again, to emphasize to the defendant how serious this matter is, and when you're 62 years old and you're told you could have a 20-year sentence, I do say, well, knowing you have life is some measure of more serious, but it's definitely impressing upon you how serious it is, the charges you're facing. You also said in response to Judge Stankiewicz that it was significant that the request for pro se representation was made after the government's case, and that at that point, he was aware of his defenses. How in the world would he have been aware of his defenses? Well, he was aware of the defense he wanted to put on. He had a trial strategy that it's obvious he had discussed trial strategies with his two experienced attorneys, who, again, he thought were doing... I appreciate that. He was really wanting to question the victim. I mean, I get that, but that doesn't tell us that he was aware of the defenses to these crimes that he was charged with, or even what the elements of those crimes were, so you could fashion some type of defense to them. I think from the... It's implied in the record when the judge says, I'm not going to let you read those now, that he had the elements right in front of him, and then there's a brief... She said, I'm not going to stop and read them to you. That's exactly... She did say that, Your Honor, but in the context of he did have the elements right in front of him because he had a set of the jury instructions. That's all I have. Thank you. And if that was a concern to him, if that caused him any trouble, he could have expressed any kind of concern to the court, and that's what makes this very different than the Hansen case. In the Hansen case, as I counted, the defendant gave four different answers to whether or not he would follow the rules. I thought I was going to stop, but I have to... I can't leave you with that. It is not the defendant's responsibility to say to the court, hey, I've got a question. I have a concern about X, Y, or Z. At this type of situation where you're waiving counsel, it's the court's duty to explain to the defendant the basis for the waiver, what he is waiving, what the charges are, and the whole panoply. I absolutely agree with that, Your Honor. Let's let Judge Matheson jump in if he wishes. On the elements issue, let me just go to the transcript. Court said, do you know what the elements are of each of the offenses? The defendant, I would like to know the elements. The court, well, they're in the instructions, and I'm not giving you time to read the entire instruction set now. Now, even if the instructions were right there on the table in front of him, the court's not going to give him time to read them, and he has said on the record that he'd like to know what the elements are. How can that be adequate to explain the charges against him before he makes a decision? Yes, I would say two things about that. First of all, he had heard about the charges at his initial appearance and throughout the government's case-in-chief. There really isn't, can be any question that he knew he was charged. I thought that was going to come up, counsel, so let me just ask you, the charges are read at the initial appearance in every case, so why would that make a difference? Don't they need to be presented contemporaneously when the defendant is making this decision on whether to self-represent? I don't, I think, obviously, it's preferable if it was brought up at the Feretta hearing, but it's not whether or not the Feretta hearing could be better, because it can always be better, but in the, particularly in the context of this case, where he's just heard all the government's evidence, he's heard opening, that it's clear he does know that, and I would just say that the issue after the judge says that, there is a colloquy, or an off-the-record conversation between the defendant and his standby counsel, and then afterwards, he says, yes, ma'am, and then she uses the point of the element to emphasize to him what a serious mistake he's making, because he's not learned in the law like his attorneys are, so it actually goes to emphasize to him the risk he's facing, and all with that, he understands it, and he still wants to represent himself. Counsel, your time's expired, but I think Judge Matheson might have gotten shortchanged a bit, so if you have any additional questions, we can continue until you're done. Yeah, just a short one. You've mentioned a number of times now how he thought his attorneys were doing a great job. What difference does that really make? I mean, you could have the greatest attorney there is, but if you want to represent yourself, why does it matter? I do think it is important, Your Honor, because as part of the right to counsel, you have to understand the benefits of having counsel, and in this case, this isn't a number of the cases are situations where, for tax protestors, for instance, they don't want to have an attorney, or they believe their attorney's incompetent, or they believe their attorney's not prepared. This is a case where the right to counsel, he was acutely aware of that right, because not only did he have two experienced attorneys, he subjectively thought they were doing a great job for him, so I think in the context of this particular case, it is an important factor. Okay, thank you. Your time's expired. I don't believe that Mr. Bailey had reserved any rebuttal time, so we will submit the case, and counsel are excused.